**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Stephanie Lunde,

        Plaintiff,

                                 Case No: 18-cv-238 (JNE/HB)

v.                                  ORDER

The Cincinnati Insurance Company,

        Defendant.

Stephanie Lunde brought this action against the Cincinnati Insurance Company ("Cincinnati"), seeking a declaratory judgment, and alleging breach of contract and breach of the duties of good faith and fair dealing. Cincinnati moved to dismiss the two breach claims. For the reasons set forth below, that motion is denied in part and granted in part.

## BACKGROUND

At all times relevant to this matter, Lunde was an employee and officer of BankFirst, a South Dakota subsidiary of Marshall BankFirst Corporation ("Marshall"). In 2008, Cincinnati issued a Financial Institution Blue Chip Policy ("the Policy") to Marshall. The Policy included directors and officers ("D&O") coverage, under which Cincinnati agreed to pay certain costs and losses that Marshall's directors and officers might incur from claims for "wrongful acts," and/or to defend those insureds against such claims. ECF No. 15-1 at 10. The original policy period ran from April 6, 2008 to April 6, 2009. ECF No. 15-1 at 7. Cincinnati subsequently issued an extended reporting endorsement that permitted claims from April 6, 2009 to April 6, 2010. ECF No. 15-2 at 37.

On April 3, 2009, an attorney representing BankFirst's directors and officers allegedly notified Cincinnati that "the [i]nsureds have become aware of potential claims" of possible wrongful acts involving, among other things, a $228 million loan for a condominium development in Florida known as Lake Austin Properties. *See* Compl. ¶¶ 26-28. On March 26, 2010, the Federal Deposit Insurance Company sent a demand letter to BankFirst directors and officers, including Lunde, seeking damages for alleged "wrongful acts" in connection with various loans. Compl. ¶ 29. Cincinnati was notified of the FDIC demand letter. Compl. ¶ 30.

On December 21, 2016, Lunde was indicted by a federal grand jury on charges of conspiracy and bank fraud in connection with the Lake Austin Properties loan. Pl.'s Mem. at 2. Lunde tendered the defense of the indictment to Cincinnati on May 22, 2017. Compl. ¶ 34. Cincinnati denied Lunde's coverage on July 27, 2017. ECF No. 15-5.

On November 27, 2017, Lunde moved to dismiss the charges against her, alleging prosecutorial misconduct. Compl. ¶ 12. The government issued a superseding indictment on December 13, 2017 that contained no allegations against Lunde. Compl. ¶ 14. On December 26, 2017, the criminal matter was terminated as to Lunde. Compl. ¶ 15. Lunde contends that she incurred "hundreds of thousands of dollars in defense costs" during the course of the criminal case against her, Compl. ¶ 12. She asserts these costs should have been covered under the Policy.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id*. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555 (1955)). Plausibility is assessed by "draw[ing] on . . . judicial experience and common sense." *Id*. at 679. Moreover, courts must "review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation." *Zoltek Corp. v. Structural Polymer Grp*., 592 F.3d 893, 896 n.4 (8th Cir. 2010).

## DISCUSSION

Lunde's complaint comprises three counts. Count One seeks declaratory judgment as to the disputed insurance coverage, Count Two is for breach of contract, and Count Three is for breach of the duties of good faith and fair dealing. Cincinnati has moved to dismiss the second and third counts only. That motion is denied in part and granted in part.

### A. Breach of Contract

Count Two of Lunde's complaint alleges that Cincinnati breached the Policy by refusing to defend or indemnify Lunde for the claims asserted in the criminal indictment against her. That count also includes a claim for extra-contractual damages if Cincinnati's breach was in bad faith.

Lunde's breach of contract claim easily withstands Cincinnati's Rule 12 challenge. Under Minnesota law, the elements of breach of contract are "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011).[1] Assuming as true Lunde's factual allegations regarding

---

[1] In her response brief, Lunde raises the possibility that South Dakota law might govern her claims. Pl.'s Mem. at 11. The Court declines to undertake a choice-of-law inquiry at this stage of the proceedings. *See P.L. Banks, Inc. v. Organized Fishing, Inc*., 2015 WL 420288, at *6 (D. Minn. Feb. 2, 2015). However, the Court notes that applying South Dakota law would not alter its analysis of Lunde's breach of contract claim, as the elements for breach under South Dakota

Cincinnati's contractual obligations, Compl. ¶¶ 18-33, she has clearly stated a plausible claim for breach. Indeed, Cincinnati does not appear to make any arguments to suggest otherwise. Accordingly, Lunde's breach of contract claim survives the motion to dismiss.

Lunde's claim for extra-contractual damages under a theory of bad faith breach does not survive, however. Under Minnesota law, extra-contractual damages cannot be recovered for a breach of contract unless the breach is accompanied by an independent tort. *Haagenson v. National Farmers Union Property & Casualty Co.*, 277 N.W.2d 648 (Minn. 1979); *Wild v. Rarig*, 234 N.W.2d 775, 790 (Minn. 1975); *see also Westfield Ins. Co. v. Robinson Outdoors, Inc.*, 2010 WL 2399547, at *2 (D. Minn. May 24, 2010) ("Minnesota law does not allow an insured to bring a bad faith claim in conjunction with a breach of contract claim, absent proof of an independent tort."). Here, Lunde does not adequately allege an independent tort. She makes reference to misrepresentation and concealment, Compl. ¶ 53.[2] But under Minnesota law, a tort is independent from a breach of contract only if "a relationship would exist which would give rise to the legal duty without enforcement of the contract promise itself," *Hanks v. Hubbard Broad., Inc.*, 493 N.W.2d 302, 308 (Minn. Ct. App. 1992), and Lunde does not allege that any such independent duty existed. Moreover, a successful claim for fraud must show not only false representation, but also inducement and detrimental reliance. *Flynn v. Am. Home Prod. Corp.*, 627 N.W.2d 342, 350 (Minn. Ct. App. 2001). Lunde's complaint alleges that Cincinnati intended to induce Lunde "to relinquish her coverage claim." Compl. ¶ 39. But there is no allegation that

---

law are not appreciably different from Minnesota law. *See, e.g.*, *Guthmiller v. Deloitte & Touche, LLP*, 699 N.W.2d 493, 498 (S.D. 2005).

[2] The Court construes Lunde's references to misrepresentation and concealment as allegations of fraud. "Fraud encompasses, among other things, theories of fraudulent misrepresentation, fraudulent concealment, and fraudulent inducement. In some circumstances, fraudulent misrepresentation and fraudulent concealment may be closely related." *Iverson v. Johnson Gas Appliance Co.*, 172 F.3d 524, 529 (8th Cir. 1999).

Lunde acted in reliance on this representation – nor, perhaps, could there be, as Lunde did not in fact relinquish her coverage claim. Therefore, Lunde's claim in Count Two for additional damages is dismissed.[3]

### B. Breach of Duty of Good Faith and Fair Dealing

Count Three of Lunde's complaint alleges that Cincinnati breached its duties of good faith and fair dealing. Under Minnesota law, all contracts include an implied covenant of good faith and fair dealing. *See Columbia Cas. Co. v. 3M Co.*, 814 N.W.2d 33, 36 (Minn. Ct. App. 2012). That covenant requires that "one party not 'unjustifiably hinder' the other party's performance of the contract." *In re Hennepin County 1986 Recycling Bond Litigation*, 540 N.W.2d 494 (Minn. 1995). Actions are done in good faith when done honestly." *Sterling Capital Advisors, Inc. v. Herzog*, 575 N.W.2d 121, 125 (Minn. Ct. App. 1998). By contrast, actions are in bad faith when they are "based on an ulterior motive, not an honest mistake regarding one's rights or duties." *Id.* To survive a motion to dismiss, an implied covenant claim must allege "sufficient facts which, if proven, would support an inference of bad faith." *White Stone Partners, LP v. Piper Jaffray Cos.*, 978 F. Supp. 878, 885 (D. Minn. 1997).

Lunde's implied covenant claim centers on three reasons that Cincinnati cited for denying coverage in its July 2017 and December 2017 letters to Lunde. *See* ECF Nos. 15-5 and 15-6.

---

[3] Unlike Minnesota, South Dakota permits tort recovery in insurance cases where a plaintiff shows either bad faith or deceit, absent an independent tort. *See Dziadek v. Charter Oak Fire Ins. Co.*, 867 F.3d 1003, 1009 (8th Cir. 2017). However, Lunde's bad faith claim fails under South Dakota law because she does not plausibly allege that Cincinnati had "knowledge or reckless disregard of the lack of a reasonable basis" for denying her coverage. *Walz v. Fireman's Fund Ins. Co.*, 556 N.W.2d 68, 71 (S.D. 1996) (internal alteration omitted). Likewise, Lunde fails to state a claim for deceit under South Dakota law because she does not allege detrimental reliance. *See N. Am. Truck & Trailer, Inc. v. M.C.I. Commc'n Servs., Inc.*, 751 N.W.2d 710, 714 (S.D. 2008). Accordingly, even if South Dakota law were to apply, Lunde's effort to recover extra-contractual damages for a bad faith breach would not survive Cincinnati's motion. *See also* fn. 1, *supra.*

Lunde argues that these explanations were made in bad faith, but her allegations fail to justify that conclusion.

First, Lunde alleges that Cincinnati knowingly misrepresented the scope and effect of a 2014 settlement agreement between Cincinnati and the FDIC. *See* Compl. ¶¶ 36-38. Under the terms of that settlement, Cincinnati was released from any and all claims relating to the Policy. ECF No. 15-5 at 4. The agreement further released Cincinnati from any and all claims brought by "BankFirst Parties." ECF No. 15-6 at 5. Lunde contends that she was not covered by either of these release provisions. Compl. ¶ 36; Pl.'s Mem. at 6. But even if this is true, the issue here is one of contract interpretation, not bad faith. Lunde places great weight on her allegation that Victor Peters, the Cincinnati attorney who wrote both of the coverage denial letters, "knew" that the settlement agreement did not release Lunde's claims because he had negotiated that agreement himself. Compl. ¶ 37. But Peters' role in drafting the agreement, if proven true, merely establishes that he was aware of its terms, not that he necessarily knew that Lunde's interpretation of the release provision was correct and chose to ignore it. This is simply too big of an inferential leap.

Lunde next alleges that Cincinnati falsely asserted that the federal charges against her were unrelated to the notice of potential wrongful acts that BankFirst sent to Cincinnati in April 2009. Compl. ¶ 41. Specifically, Lunde alleges that the July 2017 denial letter misrepresented the substance of Lunde's indictment by claiming that it did not make reference to any memorandum of the type described in the April 2009 notice. Compl. ¶ 41. Here again, however, even if Cincinnati's interpretation of the relationship between the indictment and the previously-identified wrongful acts is incorrect, this does not constitute bad faith without a plausible

allegation that this was something other than an honest disagreement about the meaning of the Policy's terms. Lunde fails to provide such allegations.

Third, Lunde points to Cincinnati's contention that the Policy covers only defense costs in connection with claims seeking money damages, not claims in criminal matters. Compl. ¶ 42. Here, Lunde's complaint is altogether devoid of any specific allegations of bad faith. Instead, she merely asserts that Cincinnati's interpretation of the Policy's terms was not in good faith. This is not sufficient to state a claim for breach of the implied covenant.

Because Lunde has not successfully stated a claim for breach of the implied covenant, her claim for additional damages in Count Three also fails. *See* Compl. ¶ 57. However, even if Lunde had successfully stated a claim for bad faith here, her claim for extra-contractual damages would still fail because Minnesota law does not permit a tort remedy for bad faith breach unless it is accompanied by an independent tort, *Wild*, 234 N.W. 2d at 790, and Lunde has not adequately pleaded any such independent tort.[4]

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant's motion to dismiss [ECF No. 12] is DENIED IN PART and GRANTED IN PART.

2. The motion is DENIED as to the claim for breach of contract in the Count Two.

3. The motion is GRANTED as to the claims for: additional damages in Count Two, breach of the duties of good faith and fair dealing in Count Three, and additional damages in Count Three. Those claims are DISMISSED.

---

[4] *See* fn. 3, *supra* and the accompanying text.

Dated: April 26, 2018                                          **s/ Joan N. Ericksen**
                                                               JOAN N. ERICKSEN
                                                               United States District Judge